The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, a Pennsylvania Corporation, Plaintiff,

v.

A.M.D. ASSOCIATES, INC., et al., Defendants.

No. 77–881–Civ–JLK.

United States District Court, S. D. Florida.

Nov. 29, 1977.

 

Reginald Hayden, Miami, Fla., for plaintiff.

John M. Murray, Miami, Fla., for defendants.

## ORDER OF SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the motion of plaintiff for summary judgment. The court, having considered the record and being fully advised in the premises, finds and concludes that the motion should be granted.

On October 17, 1977, this court entered an order of partial summary adjudication. As a result of this order, one issue remains to be determined.[1] This issue centers on the applicability of a particular clause in defendant Executive Carriers' insurance policy to the plane involved in the accident at issue. That provision is the "Temporary Use of Substitute Aircraft" clause. Under the court's order of October 17, defendants were authorized to pursue further discovery of this matter. The product of that discovery does not convince this court that summary judgment should not be entered as to this final issue.

Defendant Longe's strongest argument resides in paragraph 8 of her brief in opposition to plaintiff's motion for summary judgment. There, defendant Longe contends that plaintiff has not produced a rental agreement, thereby indicating that the manner in which the plane came to be utilized is unresolved. Defendant Longe cites further support for her opinion by referring to Mr. Barnharts' deposition of January 5, 1977 in which he stated that the plane in question had been utilized previously for pleasure or business purposes.

This argument by defendant might, in the absence of other evidence, cause this court to order that the issue of temporary coverage be reserved for trial. However, there is other evidence of a compelling nature in this case.

There have been two critical depositions of Marvin Barnhart conducted thus far. Mr. Barnhart is president of Executive Carrier Corporation and vice-president of A.M.D. Associates, two of the defendants involved in the case *sub judice.* Executive owned the Cessna 150 which was involved in the accident. In general, Executive would purchase the planes and then rent them itself or lease them to A.M.D. Associates which then rented them.

The first deposition of Mr. Barnhart was conducted on January 5, 1977. In the course of his testimony, he was asked to respond to several questions relating to the manner in which the plane came to be utilized by Mr. Longe and Mr. Zippert, the two men involved in the accident of December 7, 1976. On page 17 of that deposition, Mr. Barnhart notes that Mr. Longe had rented aircrafts from Executive in the past and that he had never rented this particular Cessna 150 from Executive "before". This testimony does not indicate with certainty whether the plane involved in the accident was rented by the pilots involved.

However, this matter is clarified by the second deposition, conducted on October 27, 1977. At this time, Mr. Barnhart stated that the Cessna 150 had been *rented* out to the two pilots—Longe and Zippert—on the day of the accident. The transcript at pages 27–28 reads, with emphasis supplied, as follows:

Q. All right. Now, on December 7, 1976, the Cessna 150, 60153, was *rented* out to the two pilots. One was Longe and the other one was Zippert; is that correct?

---

1. The court notes that while defendant seeks to reopen the matter of substitute coverage adjudicated in the October 17, 1977 order, the facts alleged by defendant in this regard are insufficient to cause this court to engage in reconsideration of that portion of the order.

A. Correct.

Q. Executive Carriers *rented* the aircraft to these two pilots?

A. That's right.

Q. Do you know which of those two the aircraft was *rented* to?

A. It was *rented* to Mr. Zippert.

Q. Is that because he was a flight instructor and Longe was yet a student pilot and—

A. You have that reversed. Mr. Zippert was the student pilot and Mr. Longe was the flight instructor.

Q. So the airplane was *rented* to the student pilot?

A. Right.

■ On the basis of this passage, it is clear to this court that the airplane was *rented* to the individuals who were flying it at the time of the accident. The fact that no rental agreement has been produced is not crucial, given the testimony of the president of one of the defendant corporations.

■ The fact that this plane was rented is critical to this court's construction of the insurance policy at issue. The "Temporary Use of Substitute Aircraft" clause is expressly limited in application to "Industrial Aid and Pleasure and Business Uses only." These terms are themselves defined by the policy. "Industrial Aid" is independently defined as is "Pleasure and Business Uses". Both of these definitions are independent of a third definition—"Instruction and Rental".

The policy states, *inter alia*, that a "pleasure and business" use is one of,

personal, pleasure, family and business uses excluding any operation *for which a charge is made.* (emphasis added)

The "industrial aid" category is defined as includ[ing] the uses enumerated in the definition of Pleasure and Business and also includ[ing] transportation of executives, employees, guests and customers, excluding any operation *for which a charge is made.* (emphasis added)

Significantly, the third category—"Instruction and Rental"—does not exclude operations for which charges are made. This category is defined so as to embody occasions wherein the plane is,

used principally in the business of the insured, including Pleasure and Business, student instruction and rental to others for the purpose of Pleasure and Business uses but excluding passenger carrying for hire or reward.

The rental of a plane during which instruction is given is clearly meant to be encompassed within this third category and not within the categories of "Pleasure and Business Uses" or "Industrial Aid." Because the "Temporary Use of Substitute Aircraft" provision establishes coverage *only* for "Pleasure and Business Uses" and "Industrial Aid", this provision is not applicable in the case *sub judice.*[2] Therefore, it is

ORDERED and ADJUDGED that plaintiff's motion for summary judgment be and the same is hereby granted.

DONE and ORDERED in chambers at Miami, Florida, this 23rd day of November, 1977.

---

2. The court does not reach the claim, by plaintiff, that the temporary substitute coverage could not be applicable to this policy a priori because the policy as a whole was allegedly limited to pleasure and business uses and industrial aid.